18 Cal.Rptr.3d 801 (2004)
122 Cal.App.4th 552
Jocelyn COLE, Plaintiff and Appellant,
v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant and Respondent.
No. B172631.
Court of Appeal, Second District, Division Seven.
September 20, 2004.
Rehearing Denied October 5, 2004.
Review Denied January 12, 2005.
*803 Plotkin, Marutani & Kaufman, Jay J. Plotkin, Nancy Marutani and Warren W. Kaufman, Sherman Oaks, for Plaintiff and Appellant.
Lord, Bissell & Brook, C. Guerry Collins, William S. Davis and Tom K. Ara, Los Angeles, for Defendant and Respondent.
*802 ZELON, J.
This appeal raises a question of first impression: may federal disability and state unemployment benefits be offset against payment of an uninsured motorist claim by the California Insurance Guarantee Association (CIGA)? Plaintiff and appellant Jocelyn Cole sued defendant and respondent CIGA, which was obligated to discharge her covered claim when her automobile insurance provider became insolvent. On cross-motions for summary judgment raising the meaning and application of Insurance Code[1] section 1063.2, subdivision (e), (subdivision (e)) to Cole's claim, CIGA prevailed. The court held CIGA may reduce payments to Cole by amounts payable to her under the federal Social Security Disability Insurance (SSDI) (42 U.S.C. § 423 et seq.) and the State of California's unemployment compensation insurance (UCI) benefits. (Unemp. Ins.Code, § 1251 et seq.). We disagree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND
The parties stipulate to the underlying facts. Cole was insured under an automobile liability insurance policy issued by National Automobile and Casualty Insurance Company (National), a member of CIGA. The National policy contained uninsured and underinsured motorist coverage[2] with a $100,000 limit.
When the National policy was in effect, Cole sustained bodily injury and damages from a multiple-party automobile accident, in which four other persons were also injured. The driver of the other vehicle had a liability insurance policy of $15,000/$30,000 per occurrence, which paid Cole $5,500, her allocated share of the policy limit.
The Social Security Administration commenced paying, and continues to pay Cole SSDI benefits, because of her "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 *804 months. . . ." (42 U.S.C. § 423(d)(1)(A).) The State of California paid Cole UCI benefits in the amount of $5,980 for the unemployment caused by her disability. (Unemp. Ins.Code, § 1251 et seq.)
Cole claims damages in excess of $100,000. She submitted a claim to National for the $94,500 difference between what she received from the other driver's insurance and the underinsured limits of the National policy. When National did not pay her claim, Cole instituted arbitration proceedings.
While the arbitration was pending, National became insolvent and CIGA assumed its defense pursuant to section 1063 et seq.[3] CIGA asserted it was entitled to credit Cole's SSDI and UCI benefits against the covered claim. CIGA also maintained Cole was required to exhaust her right of recovery under SSDI and UCI before she could seek recovery from CIGA. The trial court, in granting summary judgment to CIGA, upheld that position.
This appeal followed.

DISCUSSION

A. STANDARD OF REVIEW
The issue before us is whether subdivision (e) authorizes the offset of SSDI and UCI benefits against payment of an uninsured motorist claim by CIGA.
"The policy underlying motions for summary judgment and summary adjudication of issues is to `"promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials."' [Citations.]" (Hood v. Superior Court (1995) 33 Cal.App.4th 319, 323, 39 Cal.Rptr.2d 296.) "When the motion has been submitted to the trial court on undisputed and stipulated facts, we are not bound by the trial court's construction of the insurance policies and the applicable statutes, and instead determine these issues as a matter of law. [Citations.]" (Travelers Indemnity Co. v. Maryland Casualty Co. (1996) 41 Cal.App.4th 1538, 1543, 49 Cal.Rptr.2d 271.) CIGA's practices are evidence of the Insurance Commissioner's interpretation of the applicable statutes to which we give great weight unless clearly erroneous or unauthorized. (Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn. (1981) 125 Cal.App.3d 904, 914, 178 Cal.Rptr. 673.) "Although CIGA's interpretation of a statute may be entitled to great weight, the ultimate responsibility for the interpretation of the law rests with the courts. [Citation.]" (CD Investment Co. v. California Ins. Guarantee Assn. (2000) 84 Cal. App.4th 1410, 1418, 101 Cal.Rptr.2d 806.) We, therefore, apply the pertinent statutes to the undisputed facts and review the trial court's decision de novo. (See State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 1081, 62 Cal.Rptr.2d 178.)

B. THE CIGA STATUTORY SCHEME PAYS ONLY COVERED CLAIMS OF INSOLVENT INSURERS
In the late 1960s and early 1970s, the high rate of insolvencies among "high risk" automobile insurers led to the establishment of guaranty association legislation. Due to the threat of federal regulation of insurer insolvency, the states sought to create a system that would protect the public from such insolvencies. (See Comment, Reinsurance and Insurer Insolvency: The Problem of Direct Recovery by the Original Insured or Claimant (1982) 29 UCLA L.Rev. 872, 882.) In 1970, the National *805 Association of Insurance Commissioners (NAIC) developed the Model Act,[4] which has been adopted by many states. (Comment, supra, 29 UCLA L.Rev. at pp. 882-883.) All 50 states have since enacted statutes that establish mechanisms for paying claims against insolvent insurers in the form of "guaranty associations" or "guaranty funds," which derive their income from taxes or assessments against insurers doing business within the state. Depending on their statutory schemes, these guaranty associations or funds may be regarded as either "public corporations" connected to the administration of government or "nongovernmental bodies." (1 Couch on Insurance (3d ed. 1997) § 6:27, pp. 6-54 to 6-56; see Nat. Conf. of Ins. Guaranty Funds, Capacity of the National Network of State Guaranty Associations to Protect Consumers of Nationally Chartered Insurance Companies (2002) p. 1 (as of Sept. 20, 2004) (hereafter NCIGF paper).)
In 1969, one year before the publication of the Model Act, the California Legislature established CIGA "to pay and discharge covered claims" of insolvent members "and in connection therewith to furnish loss adjustment services and defenses of claimants when required by policy provisions." (§ 1063.2, subd. (a); see Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal.3d 775, 786-788, 244 Cal.Rptr. 655, 750 P.2d 297; Nowlon v. Koram Ins. Center, Inc. (1991) 1 Cal. App.4th 1437, 1443, 2 Cal.Rptr.2d 683; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003) ¶ 10:35, p. 10-10.) "CIGA assesses its members when another member becomes insolvent, thereby establishing a fund from which insureds whose insurers become insolvent can obtain financial and legal assistance.... Member insurers then recoup assessments paid to CIGA by means of a surcharge on premiums to their policy holders. In this way, the insolvency of one insurer ... is spread throughout the insurance consuming public, which in effect subsidizes CIGA's continued operation." (R.J. Reynolds Co. Inc. v. California Ins. Guarantee Assn. (1991) 235 Cal.App.3d 595, 600, 1 Cal. Rptr.2d 405; CD Investment Co. v. California Ins. Guarantee Assn. (2000) 84 Cal.App.4th 1410, 1418-1419, 101 Cal. Rptr.2d 806.) "`CIGA's role is somewhat akin to that of the Federal Deposit Insurance Corporation in banking, and serves to enhance public confidence in the insurance industry. [Citation.]'" (Collins-Pine Co. v. Tubbs Cordage Co. (1990) 221 Cal.App.3d 882, 885, 271 Cal. Rptr. 20.)
CIGA pays only "covered claims" that are "imposed by law" and "within the coverage of an insurance policy of the insolvent insurer." (§ 1063.1, subd. (c)(1); Aloha Pacific, Inc. v. California Ins. Guarantee Assn. (2000) 79 Cal.App.4th 297, 308-309, 93 Cal.Rptr.2d 148.) Coverage is limited to workers' compensation claims, homeowners claims, and automobile claims, which include automobile material damage, automobile liability (both personal injury/death and property damage), medical payments and uninsured motorist claims. (§ 1063.5(a)-(b).) Disability insurance is not a covered claim. (§ 1063.1, subd. (c)(3)(i).) Except for workers' compensation, CIGA's obligations are limited to claims in which the claimant or insured was a California resident at the time of the insured occurrence or that arise from property permanently located here. (§ 1063, subd. (c)(1).)

*806 C. SUBDIVISION (E) PROVIDES SETOFF ONLY FOR COVERED CLAIMS

"`"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law...." ... In determining that intent, we first examine the words of the statute itself.... Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning.... However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose.... If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.]." (CD Investment Co. v. California Ins. Guarantee Assn., supra, 84 Cal.App.4th 1410, 1417-1418, 101 Cal.Rptr.2d 806.) "In this case, we also keep in mind that `[t]he legislative intent [for creating CIGA] was to [ensure] protection for the public against insolvent insurers when no secondary insurer is available.... [¶] ... [¶] ... A remedial or protective statute should be liberally construed to promote the underlying public policy. . . .' [Citation.] And, although CIGA's interpretation of a statute may be entitled to great weight, the ultimate responsibility for the interpretation of the law rests with the courts. [Citation.]" (Id. at p. 1418, 101 Cal.Rptr.2d 806.)
At issue is the interpretation of subdivision (e), which provides: "Any person having a claim or legal right of recovery under any governmental insurance or guaranty program which is also a covered claim, shall be required to first exhaust his or her right under the program. Any amount payable on a covered claim shall be reduced by the amount of any recovery under the program." (Subd. (e).)
We will give words their ordinary, everyday meaning. (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 983, 90 Cal.Rptr.2d 260, 987 P.2d 727.) "We must harmonize `the various parts of a statutory enactment ... by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (People v. Murphy (2001) 25 Cal.4th 136, 142, 105 Cal.Rptr.2d 387, 19 P.3d 1129.)
The Insurance Code defines "covered claims" as "the obligations of an insolvent insurer . . ., including the obligation for unearned premiums, (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to the date coverage under the policy terminated and prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full. . . ." (§ 1063.1, subd. (c)(1).) "Section 1063.1, subdivision (c)(3) through (13), continues to define `covered claims' by excluding specific obligations from CIGA's insolvency insurance coverage. Among the exclusions, subdivision (c)(9) provides that `"[c]overed claims" does not include ... any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured. . . .'" (Denny's, Inc. v. Workers' Comp. Appeals Bd. (2003) 104 Cal.App.4th 1433, 1439, 129 Cal.Rptr.2d 53.) The statute expressly also states that "`[c]overed claims' does not include any obligations arising from ... disability insurance." (§ 1063.1, subd. (c)(3).)
*807 Within the framework of definitions and exclusions, the words, "which is also a covered claim" in subdivision (e) can only modify the preceding phrase, "claim or legal right of recovery." "Covered claim" in this context limits the type of coverage for which offset is available to specific claims; subdivision (e) would be meaningless in context if read to require a credit for any amounts paid to plaintiff under any governmental program. To harmonize this subsection with the other relevant provisions requires us to recognize that CIGA neither covers, nor credits, all possible forms of insurance. To permit offset, the covered claim and the right of recovery from the government benefit program must compensate claimant for the same loss, and both must fall within the definition of a "covered claim." The issue then is the nature of the benefits provided by the governmental programs at issue here and whether those benefits fall within the statutory exclusions.

D. UNINSURED MOTORIST INSURANCE IS A COVERED CLAIM
National insured Cole under an uninsured motorist policy, the underlying covered claim. (§ 1063.5, subd. (a).) Neither party claims that Cole was "covered by any other insurance of a class covered by this article" (§ 1063.1, subd. (c)(9)), unless the governmental payments fall within the scope of that provision.
Applying our construction of subdivision (e), then, we ascertain whether CIGA is entitled to offset under "[a]ny amount payable on a covered claim." Here, Cole has a "claim or legal right of recovery" under two "governmental insurance[s]," SSDI and UCI. (Subd. (e).)
CIGA argues that SSDI and UCI benefits should be offset, because Cole's disability was a consequence of bodily injury in the same accident. However, Cole's claim under both SSDI and UCI stems from her ongoing inability to be employed because she is now disabled.[5] Her claim under the National policy, however, is for bodily injury and damages from a multiple-party automobile accident with an underinsured motorist. While National's uninsured motorist coverage included "damages for bodily injury caused by uninsured motor vehicles," nothing in the policy provides for unemployment compensation arising out of disability. Likewise, neither SSDI nor UCI provides compensation for bodily injury if one is capable of attaining gainful employment. The uninsured motorist claim is, therefore, not "covered by any other insurance of a class covered by this article." (§ 1063.1, subd. (c)(9).)

E. DISABILITY INSURANCE UNDER SSDI AND UCI ARE UNCOVERED CLAIMS
Obligations arising out of "disability insurance" are expressly excluded as "covered claims" under the CIGA scheme. (§ 1063.1, subd. (c)(3)(1).) To the extent that both SSDI and UCI are disability insurance, they therefore may not be credited against Cole's recovery.
*808 The Model Act provides guidance to all states that "[l]ife, annuity, health or disability insurance are inapplicable" to guaranty programs. (Model Act, § 5.) Indeed, the case law of sister states is in accord that such uncovered claims may not be offset against recovery of a covered claim. (See Indiana Ins. Guaranty Assn. v. Davis (Ind.Ct.App.2002) 768 N.E.2d 902, 905 [because health insurance is expressly excluded from the scope of the act, the guaranty program's liability may not be reduced]; Clark Equip. v. Prop. and Cas. Ins. Guar. Fund (Ariz.Ct.App.1997) 189 Ariz. 433, 943 P.2d 793, 802, fn. 11 [workers' compensation payments excluded under the act may not provide an offset]; Harris v. Lee (La.1980) 387 So.2d 1145, 1146 [health and accident excluded from the act may not be offset]; Indiana Ins. Guar. Ass'n v. Blickensderfer (Ind.Ct.App. 2002) 778 N.E.2d 439, 444 [excluded health insurance benefit under act is not covered claim]; McMichael v. Robertson (1988) 77 Md.App. 208, 549 A.2d 1157, 1161 [union sick leave benefits may not be offset against health insurance]; Alabama Ins. Guar. Ass'n v. Stephenson (Ala.1987) 514 So.2d 1000, 1002-1003 [health insurance excluded under act may not be offset]; Connecticut Ins. Guar. Ass'n v. Zasun (1999) 52 Conn.App. 212, 725 A.2d 406, 415 [arbitration award may not be offset]; Washington Ins. Guar. Ass'n v. Mullins (1991) 62 Wash.App. 878, 816 P.2d 61, 65 [disability insurance excluded under act may not be offset].)
Accordingly, we hold that because SSDI and UCI are disability insurance, they may not be credited against Cole's recovery.

F. CALIFORNIA INSURANCE GUARANTEE ASSN. V. WORKERS' COMP. APPEALS BD. IS NOT DISPOSITIVE HERE
The issue before us was not addressed in earlier cases in California. Although the trial court relied on California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd., supra, 112 Cal.App.4th 358, 5 Cal.Rptr.3d 127, that case does not resolve this issue. There, a claimant applied for underinsured motorist benefits for a car accident. Later, when he learned his injury was industrially related, he sought workers' compensation benefits. The workers' compensation carrier became insolvent and CIGA stepped in. The court held CIGA was allowed a credit for the claimant's uninsured motorist benefits against his workers' compensation benefits. (Id. at p. 360-363, 5 Cal.Rptr.3d 127.)
California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. is inapposite to the instant case for two reasons. First, unlike disability insurance that is expressly excluded, workers' compensation insurance is a "covered claim" under CIGA's statutory scheme. (§ 1063.1, subds. (c)(1) and (3)(i).) Second, uninsured motorist insurance is also a covered claim. (§ 1063.1, subd. (c)(9).) Unlike the case before us, because that claimant had coverage from two covered claims arising from the same automobile accident, setoff was appropriate.
Therefore, nothing in California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. compels a setoff of Cole's disability payments against CIGA's obligation to pay her covered claim. Neither would this result offend the public policy that CIGA is the payer of last resort, because the statute requires the exclusion of all disability claims from consideration. There is further no double recovery, because Cole would be receiving the same disability benefits she was entitled to receive had National not become insolvent.
As the parties are entitled to a different judgment, we reverse the trial court's order denying Cole's motion for summary *809 judgment and granting CIGA's motion for summary judgment. The trial court is directed to enter summary judgment for Cole.

DISPOSITION
The trial court's order is reversed. Plaintiff is awarded her costs on appeal.
We concur: PERLUSS, P.J., and JOHNSON, J.
NOTES
[1] All further statutory references are to the Insurance Code unless otherwise indicated.
[2] Uninsured motorist coverage insures against bodily injury caused by an uninsured motor vehicle; underinsured motorist coverage insures against bodily injury caused by an insured motor vehicle that is insured for an amount less than the uninsured motorist limits carried on the motor vehicle of the injured person. (§ 11580.2, subds.(a)(1), (p); see California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd. (2003) 112 Cal.App.4th 358, 362, fn. 2, 5 Cal.Rptr.3d 127.)
[3] As provided in the National policy, arbitration proceedings have been postponed pending judicial resolution of the coverage issues raised by CIGA.
[4] NAIC Post-Assessment Property and Liability Insurance Guaranty Association Model Act (Model Reg. Service, Jan. 1987) 540-1 to 540-29. See summary of the current Model Act at (as of Sept. 20, 2004).
[5] "A person qualifies as disabled, and thereby eligible for SSDI benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. (42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B))." (Barnhart v. Thomas (2003) 540 U.S. 20, 124 S.Ct. 376, 378, 157 L.Ed.2d 333.) Under California's Unemployment Compensation Act, the Employment Development Department is authorized to pay UCI and disability insurance coverage to eligible unemployed individuals. (Unemp.Ins.Code. §§ 301, 1251-1252.)