[No. B180525. Second Dist., Div. Eight. Feb. 27, 2006.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, HARRY WHITE et al., Respondents.

[No. B183529. Second Dist., Div. Eight. Feb. 27, 2006.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, FRANCISCO TORRES et al., Respondents.

---

**COUNSEL**

Guilford Steiner Sarvas & Carbonara and Richard E. Guilford; Mullen & Filippi and Stephen P. Mackey for Petitioner in B180525.

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Heggeness & Sweet and Joseph N. Patrico for Petitioner in B183529.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, and Carol W. Schultz, Deputy Attorney General, for Respondent Employment Development Department.

No appearance for Respondent Workers' Compensation Appeals Board.

No appearance for Respondent Harry White.

No appearance for Respondent Francisco Torres.

OPINION

RUBIN, J.—

## INTRODUCTION

After the Employment Development Department (EDD) paid temporary unemployment compensation disability (UCD) benefits to disabled workers Harry White and Francisco Torres, EDD filed lien claims for reimbursement with the Workers' Compensation Appeals Board (Board).[1] The insurers for White's and Torres's employers were insolvent. Under applicable California law (Ins. Code, § 1063 et seq.), California Insurance Guarantee Association (CIGA) had assumed the insolvent carriers' obligations, but refused to satisfy EDD's liens. CIGA argued it was only required to pay a "covered claim" and EDD's liens are excluded from the definition of "covered claims" as they are obligations to the State of California. (Ins. Code, § 1063.1, subd. (c)(4).)[2] CIGA also relied on the decision in *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350 [12 Cal.Rptr.3d 12] (*Karaiskos*).) In both the Torres and White cases, the Board ruled against CIGA. The Board relied on *Viveros v. North Ranch Country Club* (2002) 67 Cal.Comp.Cases 900 (in bank) and reasoned that *Karaiskos* applied only to EDD liens litigated separately after the injured worker and the employer's insurance carrier had entered into a settlement agreement on all other issues. The Board found the fact that the liens here were not litigated separately to be significant.[3]

CIGA petitioned this court for a writ of review. (Lab. Code, § 5950.)

---

[1] When the employer disputes that the worker's absence is due to a work-related disability, the injured worker is entitled to receive unemployment compensation—disability from EDD during the period he or she is unable to work pending a final decision regarding the workers' compensation claim. (Unemp. Ins. Code, § 2629.1; Lab. Code, § 4903, subds. (f) & (g).) EDD may file a lien for reimbursement of the UCD with the Workers' Compensation Appeals Board. (Lab. Code, §§ 4903, subds. (f) & (g), 4904, subds. (a) & (b).)

UCD is familiarly known as state disability insurance. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. June 2004 update) § 16.38, p. 1163.)

[2] Insurance Code section 1063.1, subdivision (c)(4) states: " 'Covered claims' does not include any obligations of the insolvent insurer arising out of any reinsurance contracts, nor any obligations incurred after the expiration date of the insurance policy or after the insurance policy has been replaced by the insured or canceled at the insured's request, or after the insurance policy has been canceled by the association as provided in this chapter, or after the insurance policy has been canceled by the liquidator, *nor any obligations to any state or to the federal government.*" (Italics added.)

[3] The settlement of "other issues" may include whether the injury is work-related and whether the injured worker is entitled to benefits such as, temporary disability indemnity, medical treatment, permanent disability indemnity, and future medical treatment. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. June 2004 update) § 1.7, pp. 7–8.)

We hold an EDD lien is an obligation to a state because the EDD is a department of the State of California. Therefore, its lien claim is not a "covered claim" that CIGA is required to pay. (Ins. Code, § 1063.1, subd. (c)(4).) We also hold that it makes no difference when the lien is litigated, with all other issues or separately after the claimant has settled other issues with the employer and insurer. Therefore the reasoning of *Karaiskos* applies equally here. Accordingly, we annul the Board's decisions.[4]

## DISCUSSION

1. *The standard of review and rules of statutory interpretation.*

Construction of a statute is question of law which appellate courts review de novo. (*California Ins. Guarantee Assn. v. Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346].)

■ "[W]e apply the usual rules of statutory interpretation. 'The fundamental rule . . . is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . the statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' " ' [Citation.]" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 997 [109 Cal.Rptr.2d 454].) When statutory language is " ' "clear and unambiguous there is no need for construction, and courts should not indulge in it." ' " (*California Ins. Guarantee Assn. v. Liemsakul, supra,* 193 Cal.App.3d at p. 439.)

2. *CIGA is not obligated to pay EDD's lien.*

a. *Principles governing CIGA.*

■ CIGA was created by legislation to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers became insolvent. " 'Although funded by a compulsory membership of

---

[4] The Torres and White petitions filed by CIGA have been consolidated for the purpose of this opinion. Each concerns a lien filed by EDD to recover UCD paid to the injured worker. In both cases the issue of reimbursement of EDD's lien was litigated along with all other issues and not considered in a separate trial after the parties had entered into a settlement agreement on the other issues.

insurance companies doing business in California, CIGA "was created to provide a *limited* form of protection for insureds and the public, not to provide a fund to protect insurance carriers." [Citations.] CIGA's role in guaranteeing workers' compensation claims is therefore *limited*: [¶] ' " 'CIGA is not, and was *not created to act as, an ordinary insurance company*. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections.' [Citation.] 'CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.' [Citation.] '*CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy*.' [Citation.]' " ' " (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 363 [5 Cal.Rptr.3d 127], italics added, quoting *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53].) We consider CIGA's responsibility in the present case in light of the fact it is strictly a creation of statute.

> b. *CIGA is not authorized to pay obligations to a state.*

■ " ' "CIGA's authority and liability in discharging 'its statutorily circumscribed duties' are limited to paying the amount of 'covered claims.' [Citations.]" ' " (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd., supra*, 112 Cal.App.4th at p. 363.) With certain exceptions, "covered claims" are "the obligations of an insolvent insurer" ' (Ins. Code, § 1063.1, subd. (c)(1)), including the obligation "to provide workers compensation benefits under the workers' compensation law of this state." (Ins. Code, § 1063.1, subd. (c)(1)(vi).) Specifically *excluded* from the definition of "covered claims" are among others, "*any obligations to any state or to the federal government*." (Ins. Code, § 1063.1, subd. (c)(4), italics added.)

There is no dispute about what the governmental exclusion of Insurance Code section 1063.1, subdivision (c)(4) says: Claims requiring the payment of any obligation *to any state* are *not* "covered claims" for which CIGA is liable. "The logical and natural reading of the statute, then, is that covered claims do not include obligations to 'any state.' Period." (*County of Orange v. FST Sand & Gravel, Inc.* (1998) 63 Cal.App.4th 353, 357 [73 Cal.Rptr.2d 633].) ■ In *Karaiskos*, the Court reasoned that EDD's lien claim for reimbursement of UCD benefits mistakenly paid to a disabled worker constitutes an obligation to a state because, "(1) EDD is a department of an agency of the State of California, and (2) the Unemployment Insurance Code contemplates reimbursement be made to the EDD's Unemployment Compensation Disability Fund in general, rather than to a particular disabled workers' account." (*Karaiskos, supra*, 117 Cal.App.4th at p. 357.)

### 3. *EDD's right to reimbursement from solvent insurers and employers does not supersede CIGA's release from obligations to the state.*

In its answer and at oral argument, EDD contended that CIGA is required to provide workers' compensation benefits and, therefore, it is bound to reimburse EDD. EDD argues that the Legislature has provided a variety of programs to provide benefits to unemployed workers and UCD benefits are only for situations in which the disability sustained by the worker is not work related. (Unemp. Ins. Code, § 2601 et seq.) EDD argues that Unemployment Insurance Code section 2629.1 requires it to advance disability benefits when the character of the disability is in dispute, and the recovery provisions provided in section 2629.1 along with those provided for in Labor Code sections 4903 and 4904 require mandatory recoupment of EDD funds when there has been an adjudication, finding of industrial disability and award. If EDD is not reimbursed for its advanced funds in situations in which the unemployment is based on work related injury, EDD is, in effect, acting much like a workers' compensation insurer.

Undisputedly, EDD is entitled to reimbursement pursuant to those statutes and conditions when the employer's insurance company is solvent. However, the Legislature has concluded that not all workers' compensation laws should apply to CIGA. Thus, CIGA's obligations are not coextensive with those of solvent insurers. As relevant here, the Legislature has declared by statute that CIGA is not liable for obligations owed to the state or federal government. UCD liens are not the only obligations from which CIGA has been excused by law. For example, in cases where both an insolvent and a solvent insurer would be liable for a portion of a cumulative trauma injury, CIGA is excused from contributing its percentage and the solvent insurer must absorb the entire cost. (Ins. Code, § 1063.1, subd. (c)(9); *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548 [70 Cal.Rptr.2d 295].) CIGA is not liable for penalties for unreasonable delay in payment of workers' compensation benefits by the insolvent insurer for which a solvent insurer would be liable under Labor Code sections 5814 and 5814.5. (Ins. Code, § 1063.1, subd. (c)(8).)[5] And even when CIGA's obligations were

---

[5] Previously, Insurance Code section 1063.1, subdivision (c)(8) stated: " 'Covered claims' does not include any amount awarded as punitive or exemplary damages . . . ." As amended, subdivision (c)(8) now states: " 'Covered claims' does not include any amount awarded as punitive or exemplary damages, *nor any amount awarded by the Workers' Compensation Appeals Board pursuant to section 5814 or 5814.5 because payment of compensation was unreasonably delayed or refused by the insolvent insurer.*" (Stats. 2003, ch. 635, § 6, italics added.)

expanded to include obligations of insolvent self-insured employers, section 1063.1, subdivision (c)(13) limited that obligation to $500,000 per claim.[6]

EDD argues that requiring it to pay workers' compensation benefits compromises the integrity of two separate and distinct programs. It cites *Department of Employment Dev. v. Workers' Comp. Appeals Bd.* (1976) 61 Cal.App.3d 470 [131 Cal.Rptr. 204] (*Garcia*) which quotes *California Comp. Ins. Co. v. Ind. Acc. Com.* (1954) 128 Cal.App.2d 797 [276 P.2d 148] as follows: " 'The statutes here under examination are part of a comprehensive, integrated program of social insurance which, operating in their respective spheres, are calculated to alleviate the burden of a loss of wages by a protected employee during a particular period of time. . . . [The statutes] are interrelated by the common principle implicit therein of *permitting only a single recovery of benefits* by an employee in a case involving temporary . . . disability.' " (*Garcia, supra,* 61 Cal.App.3d at p. 474.)[7]

We appreciate the understandable legislative policy that ensures that a worker who is unemployed, for whatever reason, is able to obtain immediate financial assistance and avoids the possibility of the worker obtaining duplicate benefits from different sources. (*California Comp. Ins. Co. v. Ind. Acc. Com.* (1954) 128 Cal.App.2d 797, 806.) Double recovery is not at issue here,

---

[6] The amendment reads, in relevant part, "(13) 'Covered claims' shall also include obligations arising under an insurance policy written to indemnify a permissibly self-insured employer pursuant to subdivision (b) or (c) of section 3700 of the Labor Code for its liability to pay workers' compensation benefits in excess of a specific or aggregate retention, provided, however, that for purposes of this article, those claims shall not be considered workers' compensation claims and therefore are subject to the per claim limit in paragraph (7) and any payments and expenses related thereto shall be allocated to category (c) for claims other than workers' compensation, homeowners, and automobile, as provided in section 1063.5." (Ins. Code, § 1063.1, subd. (c)(13).)

Insurance Code section 1063.1, subdivision (c)(7) states, " 'Covered claims' does not include that portion of any claim, other than a claim for workers' compensation benefits, that is in excess of five hundred thousand dollars ($500,000)."

[7] EDD also contends that "these inter-related provisions are designed to help insure that the workers' own wages which fund non-industrial disability benefits are not being used to fund the workers' compensation program." The court in *Karaiskos* rejected EDD's contention that the Disability fund from which payments were made were "the workers' own wages" being used to fund the workers' compensation programs. EDD had argued, unconvincingly, that it was merely a conduit for compensation that inured to the benefit of the specific injured worker's account in the Unemployment Compensation Disability Fund. The court found that EDD's particular bookkeeping methodology had no actual effect on an employee's eligibility for future benefits, because the employee has no right to any additional UCD benefits related to that specific injury after adjudication and, if the employee suffered a new disability covered by UCD benefits, a new disability benefit period would start, regardless of whether EDD's lien for the prior injury had been satisfied. The court further noted: "[A] lien claim for a UCD reimbursement is asserted by the EDD on its own behalf. . . . [And a]n employee's receipt of UCD benefits does not relieve his or her employer or the employer's insurance carrier of liability to pay workers' compensation insurance. (Lab. Code, § 3752.)" (*Karaiskos,* at pp. 357–358.)

but more to the point the Legislature has also made a policy decision that CIGA is to have limited liability. Whether CIGA's exclusions negatively impact the UCD fund involves a legislative choice with which we are not free to tinker.

■ The Legislature is presumed to have in mind existing law when it passes a statute. (*Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 596 [262 Cal.Rptr. 46, 778 P.2d 174].) The Legislature revisited Insurance Code section 1063.1 in 2003 when subdivision (c)(8) was amended and again in 2005 to add subdivision (c)(13). We also assume the Legislature properly considers existing judicial decisions at the time legislation is enacted. (*People v. Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].) To the extent our colleagues in Division Three did not correctly assess the Legislature's intent when they issued the *Karaiskos* opinion in 2004, the Legislature has had opportunities to rectify any error. It has not acted. We conclude, therefore, that the statutory arrangement for providing benefits to disabled unemployed workers does not supersede the statutes governing CIGA's obligations.[8]

4. *The principle enunciated in Karaiskos, that EDD's lien is an obligation of the state applies on these facts as well.*

The Board held, and EDD argues, that *Karaiskos* is distinguishable because there the EDD lien was litigated after a settlement agreement and here the lien was litigated along with the injured worker's other claims. EDD has offered no persuasive policy or practical reason to support such a distinction, and we conceive of no reason why EDD's lien should be considered differently when it is litigated with other issues as opposed to following settlement. There is nothing in the language of Insurance Code section 1063.1, subdivision (c)(4) that would suggest such a dichotomy.

■ EDD is required to compensate a worker who is unemployed due to a disability. (Unemp. Ins. Code, § 2601 et seq.) Typically, an EDD lien claim is created against an injured worker's potential compensation recovery when the employer disputes that the alleged injury is work related and has denied liability for the worker's claim, or disputes the injured worker's entitlement to temporary disability or vocational rehabilitation maintenance allowance. (*Park Inn International v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases

---

[8] At oral argument, the parties were unable to suggest any other obligation to the state that the Legislature might have had in mind when it drafted subdivision (c)(4) of Insurance Code section 1063.1.

In its brief, EDD posed the following tautology for the court's consideration—if a rich uncle loaned the money to the injured worker rather than EDD advancing UCD benefits, CIGA would have been liable for the entire amount. Even if true, an obligation to a rich uncle is not an obligation to the state.

776.)[9] When EDD's payment period corresponds to an injured worker's temporary disability period or vocational rehabilitation maintenance allowance period, EDD is entitled to file a lien for reimbursement if, it is determined by the Workers' Compensation Appeals Board that the injured worker is entitled to temporary disability or vocational rehabilitation maintenance allowance during that period. (Lab. Code, §§ 4903, subds. (f) & (g), 4904 subd. (b)(1) & (2); *Garcia, supra,* 61 Cal.App.3d at p. 473; 2 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004 update) § 15.49, p. 1085.)[10]

■ When parties settle their rights, the approved and preferred form of compromise and release document is a preprinted form by the Workers' Compensation Appeals Board. (Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004 update) § 16.24, pp. 1150–1152.) The Board's Form 15 requires an entry denoting the actual dates of the periods of temporary disability, permanent disability and vocational rehabilitation entitlement that are disputed. The compromise and release must be approved by the workers' compensation judge. (Lab. Code, § 5001; Cal. Code Regs., tit. 8, § 10882.)

If EDD does not join the settlement agreement, its right to establish its lien in full in subsequent proceedings remains intact. EDD has the burden of proving the injury was work related and the worker was entitled to temporary disability indemnification, vocational rehabilitation maintenance allowance, or permanent disability indemnification and, during a period corresponding to the worker's receipt of UCD, the worker was entitled to temporary disability indemnity or vocational rehabilitation maintenance allowance. (Lab. Code, §§ 3202.5, 5705; Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004 update) § 16.42, p. 1168.) Whichever procedure is followed, whether EDD's lien is litigated along with the injured worker or after the employer and employee have settled, the results will be the same.

■ In any event, there is nothing in the procedural setting that changes the legal nature of EDD's lien: it is still an obligation to the state. That is the

---

[9] Vocational rehabilitation maintenance allowance is a benefit due to a worker engaged in job retraining after the worker has become medically permanent and stationary. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004 update) §§ 4.20, p. 238; 6.110–6.111, pp. 440–441.) A disability is permanent and stationary when the condition has reached maximum improvement or when changes are not reasonably anticipated under usual medical standards. (*Sweeney v. Industrial Acc. Com.* (1951) 107 Cal.App.2d 155 [236 P.2d 651].) Before the worker is medically permanent and stationary, he or she continues to receive temporary disability indemnity.

[10] For injuries after January 1, 1994, permanent disability compensation awarded is also available for reimbursement of EDD's lien if EDD's payments were for the same injury (sometimes UCD is paid for a combination of nonindustrial and industrial injuries). (2 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004 update) § 15.49, p. 1085.)

foundation of the decision in *Karaiskos* and that remains so here. The chronology of the lien claim in the litigation process was of no significance to the decision in *Karaiskos* and has no root in Insurance Code section 1063.1. *Karaiskos* effectively overruled the Board's in bank decision in *Viveros v. North Ranch Country Club, supra,* 67 Cal.Comp.Cases 900 (*Viveros*) the companion to *Karaiskos* at the workers' compensation proceeding, and the facts of *Viveros* were similar to those here.[11] "It defies logic and produces a ludicrous result to conclude that a payment to a department of the State is not a payment to a state. [Fn. omitted.]" (*Karaiskos, supra,* 117 Cal.App.4th at p. 362.)

### 5. *CIGA is not estopped from relying on Karaiskos.*

■■■ EDD also contends that CIGA should be estopped from now arguing that *Viveros* was effectively overruled by *Karaiskos* because essentially CIGA took a contrary position in its petition for review in *Karaiskos.* Judicial estoppel precludes a party from asserting a position in a judicial proceeding that is inconsistent with a position previously successfully asserted, to obtain an unfair advantage. (*Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 956 [81 Cal.Rptr.2d 864].)[12]

We find the rule has no application. First, the prior position was not successful; CIGA lost in *Viveros.* Second, the precise arguments CIGA made in *Karaiskos* are not germane here as CIGA did not argue that *Karaiskos* should be decided in its favor because it was different than *Viveros.* Third, we conclude nothing CIGA did gave it an unfair advantage. CIGA appears to have merely chosen to appeal one case (*Karaiskos*) which it perceived at the time to be stronger than the other (*Viveros*). Now CIGA has found a case that it believes is the proper extension of *Karaiskos.*[13]

---

[11] *Viveros* and *Karaiskos v. Metagenics, Inc.* were consolidated in 2002 by the Board for the purpose of issuing an in bank decision. (See *Viveros, supra,* 67 Cal.Comp.Cases 900.) Without making any factual distinctions, the Board held EDD's liens were not obligations of the state. CIGA petitioned for review of the Board's decision only in *Karaiskos.* In the Court of Appeal opinion in *Karaiskos,* the court held EDD's lien was an obligation of the state and CIGA was not obliged to reimburse EDD.

[12] We grant EDD's motion for judicial notice of the Board's in bank decisions in *Karaiskos* and *Viveros.* (Evid. Code, § 459.)

[13] We address one issue applicable to only one of the two consolidated cases before us. In respondent White's case, the Board adopted the worker compensation judge's decision as its own. The worker's compensation judge concluded that *Cole v. California Ins. Guarantee Assn.* (2004) 122 Cal.App.4th 552 [18 Cal.Rptr.3d 801] conflicted with *Karaiskos,* and *Cole* governed. *Cole* considered whether CIGA should be liable for injuries claimed under an uninsured motorist policy. CIGA claimed there was "other insurance," covering the injury, that is, federal Social Security disability insurance and state unemployment compensation insurance. *Cole* held these types of insurance covered losses different than uninsured motorist insurance.

## DISPOSITION

We annul the Board's orders after consideration.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied March 29, 2006, and on March 14, 2006, and March 29, 2006, the opinion was modified to read as printed above.

---

Therefore, CIGA was obligated to reimburse those agencies. *Cole* is inapplicable here because in this context unemployment disability compensation and workers' disability compensation generally compensate for the same type of loss.