Filed 10/7/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN M. SNYDER et al., as Trustees, etc., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, <br><br>     Defendant and Respondent. | A139263 <br> (Alameda County <br> Super. Ct. No. RG13666656) <br><br><br> ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

The opinion filed herein on September 17, 2014, is modified as follows:

On page 16, at the end of the third sentence of the final paragraph of section 5 of the Discussion, after the words "within the meaning of the statute," add as footnote 7 the following footnote:

> 7 / Contrary to statements made in CIGA's petition for rehearing, we do not hold that a claimant may not submit to CIGA a specific claim for coverage before exhausting its claims in the insolvency or other proceedings, or that CIGA is precluded from honoring such claims. Our opinion is limited to the time within which the claim *must* be submitted.

The petition for rehearing is denied. There is no change in the judgment.


Date:                       _____ Acting P.J.

Superior Court of the County of Alameda, RG13666656, Hon. Steven Brick, Judge.

Counsel for Plaintiffs and Appellants: MORGAN, LEWIS & BOCKIUS LLP, Michel Y. Horton, Jason B. Komorsky, Thomas M. Peterson, Jeffrey S. Raskin.

Counsel for Defendant and Respondent: LOCKE LORD LLP, C. Guerry Collins, Conrad V. Sison.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN M. SNYDER et al., as Trustees, etc., <br><br>      Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, <br><br>      Defendant and Respondent. | A139263 <br><br> (Alameda County <br> Super. Ct. No. RG13666656) |

This appeal presents the difficult question of when a claim against the California Insurance Guarantee Association (CIGA) arises, triggering the three-year statute of limitations for breach of CIGA's statutory obligations. (Code Civ. Proc., § 338.) Trustees of the Western Asbestos Settlement Trust (Western Trust), charged with paying bodily injury claims against companies that distributed asbestos-containing building materials, sought coverage under the companies' insurance policies and, in 2004, after the insurer was declared insolvent, brought a declaratory relief action against CIGA to determine CIGA's obligation to pay the insolvent insurer's policy obligations. After CIGA filed an answer denying such an obligation, the proceedings against CIGA remained dormant for almost six years. In May 2011, the Western Trust dismissed its complaint against CIGA without prejudice. The present declaratory relief action by the Western Trust against CIGA was filed in February 2013. CIGA demurred on the ground, among others, that the complaint is barred by the statute of limitations. On this ground the trial court sustained the demurrer without leave to amend and dismissed the action.

CIGA contends that its answer in the prior declaratory relief action asserting that the trust's claims were not covered claims for which it is statutorily responsible triggered the running of the three-year statute of limitations to bring an action challenging that determination. Western Trust argues that the limitations period does not begin to run until CIGA denies a specific claim for payment and that even at this time no such claim has been submitted, much less denied. We conclude that a cause of action against CIGA for breach of statutory duties does not accrue until all of the events necessary to create a covered claim have occurred, giving rise to the insured's right to demand payment from CIGA. The trust's complaint here alleges no facts indicating that all those events occurred more than three years before the complaint was filed, if they have even occurred at this time. Thus, the trial court erred in concluding that the present action is barred by the statute of limitations. We shall therefore reverse the judgment dismissing the action.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The bankruptcy court creates the Western Trust to manage asbestos claims.*

Western Asbestos Company, Western MacArthur Co. and Mac Arthur Co. (collectively, the Western Companies) distributed asbestos-containing building materials. In 2002, the Western Companies filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code for the purpose of establishing an asbestos claimants' trust. (*In re Western Asbestos Co.* (N.D.Cal. 2009) 416 B.R. 670, 676.) Such a trust is authorized by the Bankruptcy Code to manage personal injury claims arising from exposure to asbestos-containing products. (11 U.S.C. § 524(g).) "The procedure under [section] 524(g) involves the establishment of a trust to pay the future claims, coupled with an injunction, referred to as a 'channeling injunction,' which prevents future claimants from suing the debtor." (*In re Western Asbestos Co., supra,* at p. 676.)

The Western Trust, the trustees of which are plaintiffs here, was created in 2004 by an order of the bankruptcy court. (*In re Western Asbestos Co.* (Bankr. N.D.Cal. 2004) 313 B.R. 456.) Funded with settlement proceeds from several insurers, Western Trust assumed all liabilities of the Western Companies relating to asbestos claims, estimated at $6 billion. Western Trust was granted authority to initiate legal actions, in its own name

or the name of the debtors, to recover additional insurance proceeds relating to those claims. (*Id.* at pp. 460-462.) As Western Trust avers in this case, it "is charged with responsibility for marshalling the Western Companies' insurance assets, and the proceeds of those assets, and making distributions to the holders of asbestos bodily injury claims against the Western Companies."

**B.** *Western Trust seeks proceeds from Home Insurance Company, which is insolvent.*

The Western Companies held seven liability insurance policies issued by Home Insurance Company (Home) from 1976 through 1983. In June 2003, Home was declared insolvent and proceedings to liquidate it were commenced by the insurance commissioner in New Hampshire, where the insurer had its principal office.[1] The Western Companies timely filed a claim in Home's liquidation proceedings and gave CIGA notice that such a claim had been filed. Western Trust became the successor to the Western Companies' claim.

**C.** *Western Trust files an action against several insurers and CIGA.*

In November 2004, the Western Trust and Western Companies (Western plaintiffs) filed an action in San Francisco Superior Court against multiple defendants, including Zurich-American Insurance Company and related entities (collectively, Zurich). The Western plaintiffs alleged that Zurich controlled Home and was responsible for wrongly denying the Western Companies' asbestos claims under the Home policies. The Western plaintiffs further alleged that Zurich "siphoned off Home's profitable business," driving it into insolvency. Several remedial causes of action were stated against Zurich, including fraudulent transfer of property. The Western plaintiffs also pled a cause of action for declaratory relief, seeking a declaration that Zurich is liable under the Home policies as Home's successor or alter ego. The Western plaintiffs joined other insurance companies in the litigation, seeking a declaration of those insurers' obligations under polices issued to the Western Companies.

---

[1] Insurers are precluded from seeking relief in bankruptcy. (11 U.S.C. § 109(b)(2).) "[S]tate insolvency laws govern the procedures for rehabilitating and liquidating insolvent insurers." (1 Couch on Insurance (3d ed. 1997) § 5:34.)

The 2004 complaint also pled a declaratory relief cause of action against CIGA, which by statute becomes responsible to satisfy certain claims of insolvent insurers.[2] (Ins. Code, § 1063 et seq.) The Western plaintiffs sought "to determine the existence and scope of CIGA's obligations" to them "[i]n light of Home's liquidation." Plaintiffs alleged they "submitted a claim to CIGA on account of Home's insolvency, but CIGA has failed to accept Plaintiffs' claim." The Western plaintiffs sought a declaration "(i) that the Asbestos-Related Claims are covered under the Home policies at issue, (ii) that CIGA is obligated to pay all sums, up to CIGA's statutory limits, with respect to all Asbestos-Related Claims that trigger one or more of Home's policies, and (iii) that CIGA is obligated to satisfy Home's liabilities for breach of contract, up to CIGA's statutory limit."

CIGA demurred to the complaint on grounds that do not appear in this record. The demurrer was overruled and CIGA filed an answer to the complaint in August 2005. CIGA interposed a general denial of the complaint's allegations, and also alleged that the Western plaintiffs' claims "are not within the statutory definition of 'covered claims' for which CIGA is responsible or [are] otherwise excluded from CIGA coverage." CIGA's answer also pled 24 affirmative defenses. Among those defenses were allegations that Western Trust's complaint was both premature and untimely—that it had been filed too early and too late.[3] CIGA asserted that the declaratory relief action was premature

---

[2] Most states, including California, have established insurance guarantee associations to protect policyholders in the event of an insurer's insolvency. (1 Couch on Insurance, *supra*, § 6:27.) Subject to statutory standards, CIGA pays insurance claims of insolvent insurance companies from assessments against other insurance companies. Those insurance companies recoup the assessment through higher policy premiums. "In this way the insolvency of one insurer does not impact a small segment of insurance consumers, but is spread throughout the insurance consuming public, which in effect subsidizes CIGA's continued operation." (*R.J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600.)

[3] CIGA's second defense alleged that the complaint "is barred by the applicable statute(s) of limitations including, but not limited to, California Code of Civil Procedure sections 337, 338, 242, and the California case law applicable herein." The fifth defense alleged that the complaint "fails to allege facts sufficient to entitle plaintiffs to payment of past and future statutory amounts owed under the Guarantee Act." The 12th defense alleged that the complaint "is or may be barred or limited to the extent that Plaintiffs' claims are covered by other insurance available to the claimant or insured(s) under California Insurance Code § 1063.1(c)(9)(i)." The 14th defense alleged that the complaint "is or may be barred or limited by Insurance Code section 1063.1(c)(9)(ii), which only obligates CIGA to pay as 'covered claims' only those claims which remain 'unpaid by the insolvent insurer.' To the extent that any other entity is found to be legally responsible for The Home Insurance Company's ('Home') obligations under the Home policies and pays such obligations, such payments would be the result of the Home's contractual obligations and liabilities and

4

because plaintiffs were pursuing other insurance and had not exhausted their remedies in the Home liquidation proceeding. The action against CIGA remained pending but dormant as the Western Trust sought recovery in the Home liquidation proceedings.

**D. *The Western Trust settles its claim in the Home liquidation proceedings and dismisses CIGA from the Zurich litigation.***

In February 2011, the Western Trust reached a settlement agreement with New Hampshire's Insurance Commissioner, as Home's liquidator. The settlement received court approval in May 2011. The Insurance Commissioner allowed a claim of $242.5 million against Home's future liquidation, permitting "distributions on the allowed amount at the same intervals and at the same percentages" as other similarly situated creditors. The settlement agreement acknowledged Western Trust's pending lawsuit against CIGA and pending or potential claims against other insurance guaranty associations and included provisions to address those claims and their potential impact on the liquidation.

As the New Hampshire Insurance Commissioner explained when seeking court approval of the settlement: "When an insurance guaranty association such as the California Insurance Guarantee Association responds to a claim under an insolvent insurer's policy, the association generally has a corresponding claim in the insurer's liquidation both for its expenses and any payment to the claimant." The settlement agreement included provisions "designed to maintain the position of the Home estate" and its creditors "regardless of the outcome of claimants' claim against the California Insurance Guarantee Association or any other insurance guaranty association under the Home policies." Western Trust agreed to dismiss without prejudice its pending complaint against CIGA and agreed that any subsequent recovery against CIGA or other insurance

---

would constitute payment by the Home. There would be no 'covered claim' for which CIGA would be obligated to pay under such circumstances." The 15th defense alleged that the complaint "is or may be barred or limited by Insurance Code section 1063.2(e), which requires that any person 'having a claim or legal right of recovery under any governmental insurance or guaranty program which is also a covered claim, shall be required to first exhaust his or her right under the program' prior to seeking any recovery from CIGA. Any amount payable by CIGA on a covered claim shall be reduced by the amount of any recovery under the program."

guaranty associations would be deducted from the amount due from the liquidation estate.

Within days of the New Hampshire court order approving the settlement, Western Trust filed a request for dismissal without prejudice of its declaratory relief cause of action against CIGA in the Zurich litigation. CIGA was dismissed from the case in May 2011.

**E.** *Western Trust files a second declaratory relief action against CIGA.*

In February 2013, Western Trust filed the complaint for declaratory relief against CIGA that is the subject of this appeal. The complaint alleges, in relevant part: Western Trust is the holder of rights under Home insurance policies, Home is insolvent, Western Trust filed a timely claim in Home's liquidation proceedings seeking in excess of $1 billion of insurance proceeds, the liquidation claim was settled for $242.5 million, Home policy holders are unlikely to receive full payment of their claims, there is no other undisputed insurance to cover the Western Companies' asbestos bodily injury liabilities, and CIGA "disputes its statutory obligation" to pay the Western Trust for asbestos claims arising under the Home policies. The dispute rests on a number of legal grounds, including CIGA's assertions that the Western Trust lacks standing to bring a CIGA claim and that coverage from other, solvent insurers is available and yet to be exhausted. Western Trust seeks "a declaration that CIGA is required to compensate the Western Trust for amounts paid by the Western Trust on account of asbestos bodily injury claims, to the extent such claims are covered under the Home policies and would have been paid in full by Home, but for its insolvency."

CIGA responded with a demurrer and motion to strike portions of the complaint. The demurrer was based on several grounds, including the statute of limitations. CIGA maintained that any breach of its statutory obligation to pay a covered claim occurred in August 2005, when it filed its answer to the earlier declaratory relief cause of action in the Zurich litigation. CIGA argued that its allegation that Western Trust's claims were not covered claims "amounted to a denial of a claim for statutory benefits, thus triggering the accrual of the cause of action against CIGA premised on an alleged breach of its

6

statutory duties." Once triggered, CIGA argued, the three-year limitations period applicable to statutory claims (Code Civ. Proc., § 338, subd. (a)) began to run. CIGA argued that Western Trust's voluntary dismissal of the prior complaint "restored the pertinent statute of limitation . . . as if no lawsuit was brought" thus making the 2013 action untimely.

Western Trust opposed the demurrer, arguing that both the prior and the current complaints request a judicial declaration of CIGA's obligations in advance of any breach of those obligations and that "[t]he statute of limitations on the Western Trust's claim has not even started to run." Western Trust contends that both complaints allege an actual controversy concerning coverage warranting declaratory relief but do not allege that a viable claim has yet matured, that the trust has submitted a specific claim for payment, or that CIGA has denied any specific claims. Thus, in the trust's view, the statute of limitations for breach of a statutory duty, even now, has not begun to run.

The trial court found the complaint barred by the statute of limitations and sustained the demurrer without leave to amend. The court deemed Western Trust's 2004 complaint for declaratory relief a demand for payment and CIGA's 2005 answer interposing a general denial a rejection of the demand. The court explained that it "cannot in good faith construe Western's demand for a judicial determination that CIGA is liable for 'covered claims' as anything other than a demand for coverage. The *Zurich* complaint was served on CIGA, notified CIGA of Western's proof of claim in the insolvency proceedings, provided information about the policies at issue, and sought an order that CIGA would be liable for any shortfall in payment covered under the statute. . . . Thus, it substantially satisfies the requirements of the 'claim presentation' requirement for accrual of a claim, including the requirements of CIGA's website. Further, in 2004, plaintiffs alleged in the *Zurich* case that they had submitted a claim to CIGA." The court found that CIGA's denial of liability triggered accrual of the three-year statute of limitations and that the prior action, which was voluntarily dismissed, did not toll the statute of limitations. Thus, the present action commenced in 2013 was held to be time-barred.

7

The court ordered the case dismissed and Western Trust filed a timely notice of appeal.

## DISCUSSION

### 1. *Standards governing review of demurrers.*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"Questions concerning whether an action is barred by the applicable statute of limitations are typically questions of fact." (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 713.) " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971-972.)

### 2. *The nature of declaratory relief actions.*

Declaratory relief actions are well-recognized in California law. "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights and

8

duties. . . . He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. . . . The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Code Civ. Proc., § 1060.)

"The purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) Declaratory relief " 'operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Ibid.*)

**3. *The applicable statute of limitations for breach of a statutory duty is three years.***

All civil actions, including actions for declaratory relief, are subject to statutes of limitations. (*Maguire v. Hibernia Savings & Loan Society* (1944) 23 Cal.2d 719, 733-734.) "[T]he statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. [Citations.] The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) The parties agree that the complaint concerns CIGA's statutory obligations and that the three-year statute of limitations applies. (Code Civ. Proc., § 338.)

"The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements" - those elements being wrongdoing, harm, and causation.' [Citations.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element

9

essential to the cause of action.' "[4] (*Aryeh v. Canon Business Solutions, Inc., supra,* 55 Cal.4th at p. 1191.)

The duration of the limitations period applicable to a declaratory relief action is determined by the nature of the underlying obligation sought to be adjudicated. (*Maguire v. Hibernia Savings & Loan Society, supra,* 23 Cal.2d at p. 734.) "Thus, a declaratory judgment action . . . to enforce a statutory liability must be brought within the same three-year period after accrual of the cause of action . . . as an action for damages or injunction on the same liability." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 821.) An action for declaratory relief may be brought before a cause of action on the underlying obligation is breached, but in no event later than the applicable time period following the breach. (*Maguire, supra,* at p. 734.)

**4. *A cause of action accrues against CIGA when all of the events necessary to create a covered claim have occurred.***

CIGA has a statutory duty to pay "covered claims." (Ins. Code, § 1063.2, subd. (a).) Covered claims are defined as "the obligations of an insolvent insurer" which, among other things, are within the coverage of the insolvent insurer's policy and remain unpaid despite presentation of a timely claim in the insurer's liquidation proceeding. (Ins. Code, § 1063.1, subd. (c)(1).)[5] There are numerous additional exclusions and limitations,

---

[4] There are a number of exceptions to the usual rules governing limitations periods, including the doctrine of equitable tolling, which "may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." (*Aryeh v. Canon Business Solutions, Inc., supra,* 55 Cal.4th at p. 1192.) The parties do not suggest the possible applicability of any of these exceptions.

[5] Insurance Code section 1063.1, subdivision (c)(1) defines a covered claim as "the obligations of an insolvent insurer . . . (A) Imposed by law and within the coverage of an insurance policy of the insolvent insurer. (B) Which were unpaid by the insolvent insurer. (C) Which are presented as a claim to the liquidator in the state of domicile of the insolvent insurer or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings. (D) Which were incurred prior to the date coverage under the policy terminated and prior to, on, or within 30 days after the date the liquidator was appointed. (E) For which the assets of the insolvent insurer are insufficient to discharge in full. . . . (G) In the case of other classes of insurance [other than workers compensation insurance] if the claimant or insured is a resident of this state at the time of the insured occurrence, or the property from which the claim arises is

10

among them the provision that " 'Covered claims' does not include . . . a claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured." (Ins. Code, § 1063.1, subd. (c)(9)(A).)

If an insured timely submits a claim for coverage to CIGA, the point at which a cause of action accrues ordinarily is reasonably clear. The statute of limitations begins to run when CIGA rejects the claim. " '[I]f CIGA improperly denies coverage or refuses to defend an insured on a 'covered claim' arising under an insolvent insurer's policy, it breaches its statutory duties under the Guarantee Act.' " (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1000, quoting *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 792.) It follows that in such a case a cause of action accrues against CIGA when CIGA denies coverage on a submitted claim.

A more difficult question is when the limitations period begins to run for submitting a claim for coverage. Neither the statute nor any regulation specifies the point at which a claim must be submitted to CIGA. California differs from other states in this regard. All states have "statutes that establish mechanisms for paying claims against insolvent insurers in the form of 'guaranty associations' or 'guaranty funds,' which derive their income from taxes or assessments against insurers doing business within the state." (*Cole v. California Ins. Guarantee Assn.* (2004) 122 Cal.App.4th 552, 557.) These statutes vary state to state but most set a deadline for filing claims with the association. (*Benson v. New Hampshire Ins. Guaranty Assn.* (N.H. 2004) 864 A.2d 359, 364.) " 'For example, Connecticut law states that the guaranty association will not be 'obligated for any claim filed with [it] after the expiration of two years from the date of the declaration on insolvency . . . .' " (*Ibid.*) The California statute does not contain a comparable provision.

---

permanently located in this state." Several additional subparagraphs within subdivision (c) set forth additional exclusions and inclusions. The statute also provides that CIGA is not required to pay "that portion of a claim" under a liability policy in excess of $500,000. (Ins. Code, § 1063.1, subd. (c)(7).)

11

To the contrary, the California statute provides no specification of the procedures for presenting or processing claims against CIGA. As the trial court observed, the statute itself does not "describe what must occur for a plaintiff to present a claim for payment to CIGA, or what constitutes rejection of the claim by CIGA." The only express statutory requirement is that the insured present "a claim to the liquidator in the state of domicile of the insolvent insurer or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings." (Ins. Code, § 1063.1, subd. (c)(1)(C).) "The filing of a timely claim in the insolvency proceeding is a prerequisite to obtaining relief from CIGA." (*Middleton v. Imperial Ins. Co.* (1983) 34 Cal.3d 134, 136, fn. 2.) Filing such a claim is a condition precedent to the accrual of a cause of action but the deadline for filing the insolvency claim is not necessarily the date at which the cause of action against CIGA accrues and does not determine the date by which such an action must be filed. (See *Kortmeyer v. California Ins. Guarantee Assn.* (1992) 9 Cal.App.4th 1285, 1291-1292.).

Applying the basic principle that a statute of limitations does not begin to run until "the cause of action is complete with all of its elements" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397), no cause of action accrues against CIGA until an insured has acquired a "covered claim" within the meaning of the statute. "It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run." (*Maguire v. Hibernia Savings & Loan Society, supra,* 23 Cal.2d at p. 733.) A statute of limitations does not run on a claim for benefits until the claimant is entitled to receive those benefits. (*California Teacher's Assn. v. Governing Board* (1985) 169 Cal.App.3d 35, 46.) In *Unisys Corp. v. Senn* (Wash.App. 2000) 994 P.2d 244, 247-248, a Washington court interpreting its insurance guaranty statute held that a claim accrued against the insurance guarantee association when the association's payment obligation matured. Under similar reasoning, a claim accrues against CIGA when its payment obligation matures.

An insured's right to recover from CIGA does not arise and cannot be determined until it is known what recovery the insured will obtain in the insolvency proceedings. A

12

literal reading of section 1063.1, subdivision (c)(1) does not require the insured to have collected its distribution from the insolvency proceedings, or to have at least determined the portion of its claim that it will collect, before the claim becomes a "covered claim." Nonetheless, because the claim is not ripe for determination until the actual recovery in the insolvency proceedings is known (see *Berger v. California Ins. Guarantee Assn., supra,* 128 Cal.App.4th at p. 1006), a fair argument can be made that the cause of action against CIGA does not accrue until that uncertainty has been resolved. We need not determine whether that uncertainty alone is sufficient to preclude accrual of the cause of action because under the explicit language of subdivision (c)(9)(A) of section 1063.1, the insured does not have a "covered claim" until the insured has exhausted all claims for coverage against other insurers. (*Stonelight Tile, Inc. v. California Ins. Guarantee Assn.* (2007) 150 Cal.App.4th 19, 37.) The present complaint does not allege that all such claims against other insurers were exhausted more than three years before the action was filed. Indeed, it cannot be determined from the face of the pleading when, if ever, the trust acquired a "covered claim" and a cause of action against CIGA.

**5. *The record fails to establish that Western Trust submitted or that CIGA denied a claim for coverage.***

Although Western Trust pleaded that it submitted a "claim" to CIGA, there is nothing in the complaint indicating this was a claim that CIGA was then obligated to pay any amount to the trust. The record does not contain a copy of the claim the Western Companies filed in the Home liquidation proceedings or a copy of the notice of this claim sent to CIGA. The 2004 complaint alleged only that '[p]laintiffs submitted a claim to CIGA on account of Home's insolvency," without further specificity, and the current complaint adds only that the claim sought "in excess of $1billion of insurance proceeds for asbestos bodily injury liabilities." There is no specification in either complaint of any amount that Western Trust alleged to be a covered claim, much less of any particular asbestos claim giving rise to a liability of the trust covered by a Home policy for which the trust demanded payment from CIGA. Neither the 2004 nor the 2013 complaint alleged, explicitly or implicitly, that any amount was payable by CIGA as of the time the

complaint was filed**.** CIGA's assertion that Western Trust submitted a claim for payment does not "clearly and affirmatively appear on the face of the complaint" or matters subject to judicial notice. (*Guardian North Bay, Inc. v. Superior Court, supra,* 94 Cal.App.4th at pp. 971-972.) Since it does not appear from matters properly considered upon demurrer either that a cause of action for payment upon a covered claim had accrued or that a claim for any such payment had been submitted more than three years before the present complaint was filed, the action was not shown to have been barred by the statute of limitations.

Even if Western Trust were deemed to have submitted a claim to CIGA, there is no showing that CIGA denied the claim. "CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.' " (*Saylin v. California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 262.) The record does not contain any correspondence from CIGA to Western Trust or other documents to indicate that CIGA evaluated a claim, determined it did not constitute a covered claim, and denied coverage. While Western Trust sought in the 2004 declaratory relief action to obtain an advance determination that CIGA will be responsible for any amount for which the trust is held liable covered by a Home policy beyond the trust's recovery in the liquidation or other proceedings, CIGA's answer can be understood to assert no more than that the trust had not then submitted a "covered claim" within the meaning of the statute. With no specific claim before it, and with proceedings ongoing that unquestionably precluded any claim against CIGA from being a "covered claim," CIGA could hardly have alleged otherwise. Moreover, while CIGA's answer to the 2004 complaint obviously sought to preserve all possible defenses, having alleged that the complaint was premature because the trust was pursuing other insurance and had not exhausted its remedies in the Home liquidation proceedings,[6] CIGA can hardly assert at this time that the prior action was, in fact, a timely demand for payment barring a claim when the former uncertainties have been eliminated.

---

[6] Although the settlement agreement between Western Trust and the liquidator establishes the trust's claim against the liquidation estate to be $242.5 million, apparently only a portion of this amount is likely to be available for payment by the estate.

CIGA's argument that the 2004 complaint for declaratory relief constituted a claim for payment and CIGA's answer a denial of coverage misconstrues the nature of a declaratory relief action. As indicated above, such an action may be maintained before a wrongful act occurs or liability arises. As one commentator has noted, "[t]he cause of action for declaratory relief may accrue, in the sense that an action may be maintained, before a breach occurs. This is the very purpose of the remedy." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 685, p. 905.) Such actions operate prospectively "to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs." (*Babb v. Superior Court, supra,* 3 Cal.3d at p. 848.) It has long been understood that "a party may have a right to sue for declaratory relief without setting in motion the statute of limitations." (*Maguire v. Hibernia Savings & Loan Society, supra,* 23 Cal.2d at p. 734.) It would be a perversion of the process to hold that the assertion of a dispute in a declaratory relief action, and a defendant's answer acknowledging the controversy, constitutes either a claim that the defendant has already breached its obligations or an actionable repudiation of the alleged obligations.

An insurance coverage case is instructive. In *United Pacific-Reliance Ins. Co. v. DiDomenico* (1985) 173 Cal.App.3d 673, 675, plaintiff insurer assumed defense of a tort action against defendant arising out of an incident in 1977. The insurer's defense was pursuant to a reservation of rights, and in February 1979, it filed a complaint for declaratory relief seeking an adjudication of no coverage under the policy. (*Ibid.*) In 1983, the declaratory relief action was dismissed without prejudice and a second complaint for declaratory relief was filed two days later. (*Id.* at pp. 675-676.) A demurrer based on the statute of limitations was sustained by the trial court. (*Id.* at p. 676.) The court of appeal reversed: "In the instant case, the underlying cause of action for coercive relief would have accrued upon the breach of the contract of insurance. Such a breach would have occurred, for instance, had appellant refused to defend the tort action. In such a situation, the statute of limitations for a cause of action based on a written contract would be four years. . . . However, because appellant assumed defense of the civil action and has continued to discharge its obligations under the policy, no breach of contract

15

exists. In the absence of any breach, no cause of action for coercive remedy has accrued and no statute of limitations has been set in motion." (*Id.* at p. 677.) The court did not find that the insurer's prior declaratory relief action, in which it disputed coverage, was itself a breach of contract triggering the statute of limitations.

To preserve a claim for coverage by CIGA, an insured must give CIGA notice of its potential claim by the deadline for filing a claim in the insolvent insurer's liquidation proceedings. This notice permits CIGA to take such steps as it deems appropriate to ascertain the facts and protect its interests in responding to an eventual demand for payment. The time within which the insured must submit its claim for payment, however, does not commence until the insured possesses a "covered claim" within the meaning of the statute. CIGA must be presented with a timely claim for payment and affirmatively deny coverage before a breach of its duty can occur. An insured's complaint seeking a declaration of duty, and the defendant's answer disputing its duty, does not constitute the submission and denial of a claim sufficient to trigger the statute of limitations.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to overrule the demurrer insofar as it is based on the statute of limitations, without prejudice to

16

considering such other defenses and issues as may be appropriate. Western Trust shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278.)

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

Superior Court of the County of Alameda, RG13666656, Hon. Steven Brick, Judge.

Counsel for Plaintiffs and Appellants:   MORGAN, LEWIS & BOCKIUS LLP, Michel Y. Horton, Jason B. Komorsky, Thomas M. Peterson, Jeffrey S. Raskin.

Counsel for Defendant and Respondent:  LOCKE LORD LLP, C. Guerry Collins, Conrad V. Sison.