Filed 10/16/15  Miani v. Barance CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| YOLANDA MIANI et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>LABIB MAJID BARANCE et al.,<br><br>    Defendants and Respondents. | A142581<br><br>(San Francisco City and County<br>Super. Ct. No. CGC 10 497904) |

Mi Casa Capital Corporation (Mi Casa)[1] introduced Yolanda Miani to Labib Majid Barance.  Miani loaned Barance $129,375, secured by a third deed of trust, junior to $2.4 million in senior loans.  Barance sought refinancing for the senior loans, and Mi Casa suggested that Miani subordinate her loan to the new loans, which totaled $2.65 million.  She refused.  Mi Casa then induced Miani to sign documents representing that they were necessary to permit her to be paid in full.  Miani was unaware that the documents effected a subordination of her loan.  Thereafter, one of the senior refinancers foreclosed on Barance's property and Miani's security lien was extinguished.

After a bench trial, the court found Mi Casa had committed an unfair business practice and ordered it to pay Miani the origination and processing fee it earned in the refinancing.  Miani appeals, arguing the court should have reinstated her security interest

---

[1] Mi Casa also does business as UniBank Capital Corporation.  We refer to both entities as Mi Casa.

1

in the property, and declared it first in priority.[2] We hold the trial court did not abuse its discretion in fashioning an equitable remedy and affirm.

## I. BACKGROUND

The following evidence from the trial record supports the trial court's posttrial findings.

In January 2006, Barance bought a building on Treat Avenue in San Francisco (Property) and opened an automotive repair business. To finance the purchase, he obtained a $2.15 million loan from Owens Mortgage Investment Fund (Owens) and $250,000 from Steve and Jeannine Kurtela, the prior building owners. The loans were secured by first and second deeds of trust respectively.

Mi Casa is a residential mortgage broker. Around the time of the Owens and Kurtela loans, Christopher O'Dell, a Mi Casa loan officer, helped Miani purchase a home. O'Dell told Miani about an investment opportunity with Barance and helped her take out a line of credit against the equity in her new home so she could loan money to Barance. In July 2006, Miani loaned Barance $129,375 at 13 percent interest with full payment due in October 2006. Barance executed a promissory note for the loan as well as a deed of trust (July DOT), which Miani understood was in third position after the Owens and Kurtela liens. Miani received two loan payment checks from Barance's auto repair business that were rejected for insufficient funds, and she received no payment at all in October 2006. She contacted Barance about the missed payment, and he said he had no money to pay her.

---

[2] Miani's husband, Cesar, also made a loan to Barance in the amount of $28,000. Cesar's lien also was extinguished by the senior refinancer's foreclosure. He was a coplaintiff below. The trial court entered judgment against Barance on the amounts due on Cesar's loan and denied the remainder of Cesar's claims. Although Cesar is identified as an appellant here, he raises no argument on appeal relevant to his claims. Any separate claims Cesar might have are therefore deemed abandoned, and we discuss only the arguments raised on behalf of Miani herself. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538.)

Because Barance was also having trouble making his payments on the Owens and Kurtela loans, he approached Mi Casa for refinancing assistance. Mi Casa referred Barance to Lone Oak Fund, LLC (Lone Oak), and Lone Oak in turn referred part of the refinancing to a pension fund, CVA Pension FBO A.S. Abbasi (Abbasi). O'Dell told Miani about the attempted refinancing and suggested she extend her loan to Barance. Miani said she wanted payment in full. O'Dell also asked Miani to subordinate her deed of trust to the refinancing liens, but she repeatedly refused to do so.

Nevertheless, in October 2006, Barance executed a new note for Miani's loan with an extended term, secured by a new deed of trust (October DOT). In November, O'Dell asked Miani to come to his office to sign what O'Dell described as "the paperwork that I needed to sign to get repaid." The documents included a "Substitution of Trustee and Full Reconveyance" (Reconveyance). Later in November, Miani received by mail a copy of the October DOT, which had been recorded on November 20 (November DOT) with the following handwritten language added to the October DOT: "This Deed of Trust is 3rd and subordinate to a 1st and 2nd Deed of Trust recording concurrently herewith." Miani never authorized anyone to make that modification and she was surprised to learn that her loan was third in priority to new financing. Deeds of trust securing a $2.25 million loan by Lone Oak and a $400,000 loan by Abassi (a total of $2.65 million in financing) held the first and second secured positions. When the Lone Oak and Abbasi loans closed in late November 2006, the proceeds were used to pay off the Owens and Kurtela loans as well as a $61,224.48 liability to the Internal Revenue Service. Mi Casa received a $23,860 origination and processing fee. Representatives of Lone Oak and Abbasi testified at trial that these entities would not have loaned Barance these funds if Miani's lien had remained in first position.

In April and October 2007, Miani received two loan payment checks that were rejected for insufficient funds. She received a total of three payments of about $1,400 each in October, November, and December 2006. Miani attempted to foreclose in October and November 2008, but did not have the ability to pay off the priority liens. Abassi successfully foreclosed at about that time, extinguishing Miani's junior lien.

Miani filed this lawsuit in March 2010 against Barance, Mi Casa, Lone Oak, Abbasi and related entities.

*Statement of Decision and Judgment*

The trial court issued a statement of decision following trial. On the first cause of action for breach of the loan contract, the court awarded Miani judgment against Barance for $129,375 minus the three $1,400 payments made by Barance, plus interest, attorney fees and costs.

On the third cause of action (alleged against all defendants) for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.),[3] the court found: "The [Lone Oak and Abbasi] money would not [have been] funded without their liens recorded as first and second. Mr. O'Dell was informed of these lien requirements by the new lenders and asked [Miani] to extend her 7/27/06 loan to Mr. Barance or sign a substitution of trustee and full reconveyance and agree to a new loan with Mr. Barance and record her new lien. [Miani] told Mr. O'Dell she only wanted her money back and would not agree to a reconveyance. [¶] . . . Employees of [the title and escrow company] emailed to employees of [Mi Casa] that [Miani] must sign a [reconveyance] on her lien for the escrow to close . . . . Mr. O'Dell phoned [Miani] to return to [the Mi Casa] office and sign additional documents so she could get paid in full on her loan. She signed [the Reconveyance] at Mr. O'Dell's instruction without reading the document. There was no hand writing above the [Property] address [on the associated deed of trust].
[¶] Mr. O'Dell had a personal and professional with Mrs. Miani. Before this signing, he helped her refinance her home in Redwood City. With Mi Casa Capital as the real estate agent and broker, he helped her buy a home in Union City with the refinance funds. With equity from the Union City home he encouraged her to get a line of credit and make a loan to the Defendant Barance. The court finds [Miani] reasonably relied on Mr. O'Dell's statements and was not at fault by not reading [the Reconveyance]. [¶] The words 'This Deed of Trust is 3rd and subordinate to a 1st and 2nd Deed of Trust

---

[3] Undesignated statutory references are to the Business and Professions Code.

4

recording concurrently herewith' on page one of [the deed of trust] was forged. [Barance] and [Miani] were not told of the writing and did not consent. This handwriting is a forgery and the deed is void. [¶] The court finds against Mi Casa . . . . [Miani] signed [the deed of trust] [*sic*] because of statements by Mi Casa . . . [employees] when they knew the statements were not true and escrow would not close unless her lien remained a third lien on the property. The escrow fee to Mi Casa . . . of $22,860.00 [*sic*] at the escrow closing is awarded to . . . Miani plus interest, costs per a cost bill." The judgment later entered by the court does not declare the deed of trust void, but simply awards Miani $22,860 from Mi Casa plus interest and costs.

The court resolved the remaining causes of action against Miani.[4] Miani appeals. Only Lone Oak and Abbasi (hereafter Respondents) have filed a respondents' brief.

## II.    DISCUSSION

Miani does not contest any of the trial court's factual findings. Instead, she argues the remedy imposed for her UCL claim was inadequate. She argues that the trial court should have either declared the Reconveyance void and restored the July DOT, or declared the July DOT (or the November DOT) first in priority over the Lone Oak and Abassi deeds of trust.

Miani argues the trial court should have declared the Reconveyance void because Miani executed the document without realizing what it was. She relies on case law holding that a "*deed is void* if the grantor's signature is forged or *if the grantor is unaware of the nature of what he or she is signing*. [Citation.] A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations." (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378, italics added (*Schiavon*).) "*If the reconveyance was*

---

[4] Miani's third amended complaint alleged causes of action against the various defendants for breach of contract, breach of implied covenant of good faith and fair dealing, unfair competition, accounting, intentional misrepresentation, unjust enrichment, fraudulent concealment in violation of lending statutes, common counts, a claim for money due, declaratory relief, and violation of the Consumer Legal Remedies Act.

5

*void, it would have no effect even against a subsequent bona fide purchaser.* [Citations.] If the reconveyance was voidable, however, it may have been subject to cancellation and rescission as against the trustee, but could be relied upon by a subsequent bona fide purchaser for value . . . ." (*Ibid.,* italics added.) In *Schiavon*, a *request* for a reconveyance was forged, but the reconveyance itself was executed by a trustee "with full awareness of the effect of the act." (*Id.* at p. 379.) Thus, the deed was voidable but not void as against the defendant, a bona fide purchaser, and the trial court properly refused to set aside the reconveyance. (*Id.* at pp. 376, 379.) Here, on the other hand, there was no separate *request* for a reconveyance, followed by a reconveyance that was executed by the trustee. Instead, Miani alone executed a "Substitution of Trustee and Full Reconveyance." That is, she substituted herself in as trustee and then personally reconveyed the deed of trust. The trial court found that she executed this document without reading it, reasonably relying on O'Dell's representation that she needed to execute the document to be paid in full. That is, she executed the document "unaware of the nature of what . . . she [was] signing." (*Id.* at p. 378.) Under *Schiavon*, Miani argues, the Reconveyance was void even against Lone Oak and Abbasi, who were bona fide purchasers for value.

The problem with this argument is that Miani prevailed on an *unfair competition cause of action* under the UCL, not an action to set aside a fraudulent conveyance. (See *Schiavon, supra,* 84 Cal.App.4th at p. 378 ["Plaintiffs seek to cancel the reconveyance of their deed of trust . . . [even though] defendant was a bona fide purchaser for value, with no knowledge of the underlying fraud . . ."].) The trial court here ruled that Miani's fraud claims were time barred, but the UCL claim was not because of the longer limitations period (§ 17208). Under the UCL the court has broad discretion in fashioning an appropriate remedy. (§ 17203.) We review the relief ordered by the trial court, therefore, not for legal error under *Schiavon* but for an abuse of discretion in fashioning a remedy for the UCL violation.

"UCL remedies are cumulative to remedies available under other laws (§ 17205) and, as section 17203 indicates, have an independent purpose—deterrence of and

6

restitution for unfair business practices. [Citation.] . . . [¶] The court's discretion is very broad. Section 17203 does not mandate restitutionary or injunctive relief when an unfair business practice has been shown. Rather, it provides that the court '*may* make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore . . . money or property.' [Citation.] That is, as our cases confirm, a grant of broad equitable power. A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179–180.)

We discern no abuse of discretion. The court found no evidence that Lone Oak and Abbasi conspired with Mi Casa to defraud Miani, and it entered no judgment against either Lone Oak or Abbasi. The court thus impliedly found Lone Oak and Abbasi were bona fide purchasers of the Property with no knowledge of the fraudulent reconveyance of Miani's July DOT. Were the Reconveyance set aside, Lone Oak and Abbasi would suffer impairment of their security interests despite no wrongdoing on their part. Leaving the Reconveyance in place, on the other hand, left Miani in the same position she had held before the November 2006 refinancing—in a third security position, albeit with an additional $250,000 in secured debt ahead of her. We see no evidence that the additional amount of senior debt materially affected Miani's position as a junior secured creditor. The evidence was that Barance was already unable to pay the senior obligations. Owens and the Kurtelas had been pursuing foreclosure before the November 2006 refinancing and Miani did not have the funds necessary to pay off those superior liens and thus foreclose on her interest in the Property before the refinancing. Moreover, Lone Oak and Abbasi would not have refinanced the loans with Miani's deed of trust in first position. Therefore, even in the absence of fraud by Mi Casa, Miani's security interest would likely have been lost through foreclosure by Owens or the Kurtelas, just as it ultimately was by the Abbasi foreclosure. The underlying debt was not extinguished, and Miani obtained judgment against Barance for the full amount due—the only remedy against the borrower available to any sold out junior lien holder. Although Miani was technically

"made whole" by the money judgment, the court also required Mi Casa to disgorge its fees in favor of Miani as a consequence of its misconduct. The trial court did not abuse its discretion in weighing the equities of the case and fashioning this remedy.

Miani also argues the court should have granted her claim for a judicial declaration that the Reconveyance was void. Declaratory relief is also discretionary. (Code Civ. Proc., § 1061.) Moreover, the relief Miani sought in her declaratory relief cause of action was the same relief she impliedly sought in her time-barred fraud cause of action. A declaratory relief action is time-barred if the limitations period has run on a cause of action for breach of the underlying obligation. (*Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1208.) The court, therefore, also did not abuse its discretion in denying declaratory relief.

### III. DISPOSITION

The judgment is affirmed. Miani shall bear Lone Oak and Abbasi's costs on appeal.

_____
BRUINIERS, J.

WE CONCUR:

_____
JONES, P. J.

_____
SIMONS, J.

8